# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:07CR34 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| MARQUES SANDERS, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Marques Sanders (Sanders) (Filing No. 16). Sanders is charged in the Indictment with possession of a firearm after having been convicted of a felony (Count I) in violation of 18 U.S.C. § 922(g)(1) and criminal forfeiture (Count II) pursuant to 18 U.S.C. § 924(d) regarding the subject firearm.

Sanders seeks to suppress statements he made to law enforcement officers on September 27, 2006. Sanders contends the custodial statements were not the result of a voluntary relinquishment of his **Miranda** rights because he was intoxicated at the time.

The court held a hearing on the motion on March 30, 2007. Sanders was present for the hearings along with his counsel, Shannon P. O'Connor, First Assistant Federal Public Defender. The United States was represented by Assistant U.S. Attorney Russell X. Mayer. The court heard the testimony of Omaha Police Department (OPD) Sergeant Dave Bianchi (Sergeant Bianchi). The court received into evidence a copy of an OPD Rights Advisory Form (Exhibit 1). A transcript (TR.) of the hearing was filed on April 5, 2007 (Filing No. 24), at which time the motion was deemed submitted.

## FINDINGS OF FACT

Sergeant Bianchi is a supervisor with the narcotics unit of the OPD (TR. 7). Sergeant Bianchi has been with the OPD for fifteen years (TR. 7). In September of 2006, Sergeant Bianchi was assigned to the north investigations unit, which is responsible for following up on criminal reports such as crimes against persons or property (TR. 8). On September 27, 2006, at approximately 8:15 a.m., Sergeant Bianchi was asked by other

officers to assist in the interview of Sanders (TR. 11-12). Sanders had been arrested after officers responded to a shots fired call (TR. 12). The officers saw a vehicle leave the scene where shots were fired and pull into a driveway (TR. 12). Sanders got out of the vehicle and ran away from the officers (TR. 12). The officer pursued Sanders for less than one block, ultimately arresting Sanders and locating a firearm in the path of the pursuit (TR. 12-13, 51).

Prior to the interview, Sergeant Bianchi was familiar with Sanders based on previous police contact (TR. 13). Sanders had been arrested, for a variety of misdemeanors and felonies, approximately 38 times between 1994 and the present (TR. 13). Sergeant Bianchi approached Sanders who was seated in a chair in an interview room in the DUI section of the booking area of the jail (TR. 18). Sergeant Bianchi assumed Sanders was in the DUI area for DUI testing, but was focusing the interview on issues related to the firearm (TR. 18).

Sergeant Bianchi moved Sanders to another more secluded interview room in the same area, but approximately twenty feet away from the DUI section (TR. 19). Specifically, Sergeant Bianchi had said "follow me" to Sanders, who complied. (TR. 19). Sanders did not need assistance to move from one room to another (TR. 19). Sergeant Bianchi and Sanders both sat down in the interview room, approximately two feet apart (TR. 21, 23). No other officers were present during the interview (TR. 25). Sergeant Bianchi did not audiotape record the interview and no videotape recording exists (TR. 21).

Sergeant Bianchi has observed individuals under the influence of drugs or alcohol on hundreds of different occasions (TR. 22). Sergeant Bianchi described indicators of a person being under the influence of alcohol as having thick-tongued or slurred speech, rambling, lack of concentration, drowsiness, loss of motor skills and a strong odor of alcohol on one's person or breath (TR. 22). Sergeant Bianchi could smell alcohol on Sanders' breath and on his person, leading Sergeant Bianchi to the conclusion Sanders had been drinking (TR. 23, 26).

As part of his standard procedure, Sergeant Bianchi initiated the conversation by asking Sanders if he needed any medical assistance (TR. 23). Sanders told Sergeant Bianchi that it hurt when he was tackled by the police officers, but he was not injured (Tr.

24).  Sanders did not appear to be in any physical discomfort (TR. 25).  Sanders did not ask for medical assistance, medication or to use the bathroom during the interview (TR. 24).  Sergeant Bianchi, who was in a business suit, introduced himself to Sanders and explained he was a police detective (TR. 25-26).

Sergeant Bianchi also explained that because Sanders was in custody, Sergeant Bianchi would read a rights advisory form to Sanders before asking any questions (TR. 26).  Sergeant Bianchi also told Sanders that he did not mean to sound condescending, but he was required to read the form as it was written and verbal responses from Sanders were necessary (TR. 26).  Sergeant Bianchi filled out an OPD Rights Advisory Form for the interview (TR. 27; Exhibit 1).  Sergeant Bianchi read the form to Sanders and Sergeant Bianchi wrote Sanders' response to each question, which was yes (TR. 28-30; Exhibit 1).  At the conclusion of the advice of rights, Sergeant Bianchi said, "I want to talk to you about what happened last night, okay?" (TR. 30; Exhibit 1).  Sanders responded, "yeah" (TR. 30; Exhibit 1).  Sergeant Bianchi had crossed out the last question printed on the form which was, "Knowing your rights in this matter, are you willing to talk to me now?" (TR. ; Exhibit 1).  Sergeant Bianchi changes the last sentence to make the questioning process more personal on a semi-regular basis (TR. 47).

Sergeant Bianchi did not make any threats or promises to Sanders in exchange for talking during the interview (TR. 25).  The interview started at 8:20 a.m. and lasted approximately 30 minutes (TR. 28).  Sergeant Bianchi questioned Sanders about the firearm found at the time of Sanders' arrest (TR. 31-34).  Sergeant Bianchi did not ask questions related to a DUI charge (TR. 31).  Sanders appeared to understand the questions asked and responded appropriately (TR. 32, 35).  At one point, Sanders stated he felt "woozy" but he "was keeping it together" (TR. 42).  Additionally, Sanders, was facing away from Sergeant Bianchi with a blank stare and Sergeant Bianchi assumed Sanders had stopped paying attention (TR. 41).  During the interview, Sanders said he was tired, had glossy eyes and slouched in his chair, but Sanders did not appear to be falling asleep or dozing off (TR. 33).  Sanders responded to questions openly and directly (TR. 33).  When Sanders was giving a narrative he was very systematic about the order of events (TR. 33).  When the topic of the interview changed from a description of the evening to

specific questions about the firearm, Sanders became evasive and Sanders would answer a question with a question (TR. 34).  Sergeant Bianchi felt the responses were thought out or planned, rather than a typical response by an intoxicated individual (TR. 43-44).  At no time during the interview did Sanders seek the assistance of counsel or to terminate the interview (TR. 35).

OPD officers attempted to interview Sanders during a second interview approximately thirty minutes later.  During the hearing, the government concedes statements made by Sanders during a second interview on September 27, 2006 should be suppressed because incriminating statements were made after Sanders invoked his right to remain silent (TR. 3-6).  The government agreed not to use such statements during its case-in-chief at trial (TR. 5).

## CONCLUSION OF LAW

Sanders contends the statements he made to Sergeant Bianchi were involuntary because Sanders was intoxicated after having drunk alcohol.  Additionally, Sanders argues Sergeant Bianchi's alteration of the rights advisory form is problematic given Sanders' level of intoxication. Therefore, Sanders argues, although he agreed to waive his **Miranda** rights after Sergeant Bianchi read them from the OPD form, Sanders did not knowingly and voluntarily relinquish those rights when he made statements to Sergeant Bianchi.

The touchstone for the admissibility of a defendant's statements is voluntariness. **Brown v. Mississippi**, 297 U.S. 278 (1936).  The government bears the burden of proving by a preponderance of the evidence that the defendant's waiver of **Miranda** rights was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege.  **United States v. Black Bear**, 422 F.3d 658 (8th Cir. 2005).  "A waiver is knowing and intelligent if made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"  **United States v. Harper**, 466 F.3d 634, 643 (8th Cir. 2006) (**quoting Moran v. Burbine**, 475 U.S. 412, 421 (1986)).  A waiver is "voluntary" if it was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception.  **Thai v. Mapes**, 412 F.3d 970, 977 (8th Cir. 2005).

The court must look to the totality of circumstances in determining whether or not the statements were voluntary. ***Mincey v. Arizona***, 437 U.S. 385 (1978); ***Colorado v. Connelly***, 479 U.S. 157 (1986); ***Schneckloth v. Bustamonte***, 412 U.S. 218 (1973). In determining whether a defendant made statements voluntarily, the court must also determine if the accused was coerced or his will was overborne. ***United States v. Wilson***, 787 F.2d 375, 380-81 (8th Cir. 1986). The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. ***Schneckloth***, 412 U.S. at 225-26. Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. ***Connelly***, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. **See *Oregon v. Mathiason***, 429 U.S. 492, 495 (1977).

Additionally, although Sanders may have ingested alcohol before he was arrested, such alcohol consumption does not necessarily render his statements involuntary. "[T]he mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary. In each case, '[t]he question is one of mental awareness so that the act of consent was the consensual act of one who knew what he [or she] was doing and had a reasonable appreciation of the nature and significance of his [or her] actions.'" ***United States v. Rambo***, 789 F.2d 1289, 1297 (8th Cir. 1986) (consent to search voluntary despite use of cocaine) (internal citations omitted); **see *United States v. Annis***, 446 F.3d 852, 855 (8th Cir. 2006) (pain from injuries combined with methamphetamine withdrawal did not make voluntary or knowing waiver impossible when defendant did not appear to be in pain or suffering from withdrawal, made no complaints and answered questions reasonably); ***United States v. Makes Room***, 49 F.3d 410, 415 (8th Cir. 1995) (statement not involuntary due to intoxication when effects of alcohol had worn off and defendant did not appear intoxicated); ***United States v. Gipp***, 147 F.3d 680, 686 (8th Cir. 1998) (consent to search voluntary despite use of marijuana); ***United States v. Turner***, 157 F.3d 552, 555-56 (8th Cir. 1998) (valid waiver of rights despite intoxication with PCP); ***United States v.***

5

*Martin*, 28 F.3d 742, 746 (8th Cir. 1994) (statements voluntary despite use of methamphetamine).

Sanders was calm and coherent during the interview. Sanders answered questions and spoke to Sergeant Bianchi in a manner which indicated he knew what was going on and he was aware of his circumstances. Sanders' complaint of tiredness, his ingestion of alcohol and temporary failure to pay attention to Sergeant Bianchi do not render the statements involuntary given the totality of the circumstances and the manner of Sanders' responses, in general. Similarly, Sergeant Bianchi's alteration of the language in the final question of the rights advisory form does provide evidence of intimidation, coercion, or deception. Sanders also had prior experience with law enforcement. For all of these reasons, the court finds Sanders' statements to Sergeant Bianchi were voluntarily made. Sanders's motion to suppress such statements should be denied. The government does not seek to introduce any subsequent statements by Sanders (TR. 5). Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Sanders' motion to suppress (Filing No. 16) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 30th day of April, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge